Rowe v. Merrimack House of Correction CV-97-650-M    04/13/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David Rowe,
        Plaintiff

v.                                          Civil No. 97-650-M

Carol A. Anderson, Superintendent
Merrimack County House of Corrections,
        Defendant

## O R D E R

At all times relevant to this proceeding, plaintiff was a prisoner at the Merrimack County (New Hampshire) House of Corrections ("MCHC").  He brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant, acting in her official capacity as Superintendent of the MCHC, deprived him of certain rights guaranteed by the First Amendment.  Specifically, he says that on three occasions he was denied permission to attend Bible study classes, as a result of which he claims to have suffered "severe stress, depression and adjustment disorders during [his] stay at [the MCHC]."  Plaintiff's affidavit (attached to document no. 21) at para. 7.  Defendant denies that plaintiff's constitutional rights were in any way violated and has moved for summary judgment.

### Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

## Background

Plaintiff is a non-immigrant visitor for pleasure from Jamaica who overstayed his visa by more than six years and committed violent criminal offenses during his time in the United States. He was ordered held without bail pending deportation, and on August 1, 1997, was committed to the MCHC. In light of his history and resulting security classification, plaintiff was incarcerated in "dayroom no. 1" at the MCHC, an area apparently reserved for maximum security inmates under MCHC's classification plan. See, e.g., Plaintiff's declaration in opposition to summary judgment (attached to document no. 45) at para. 2.

On February 14, 1997 (prior to plaintiff's incarceration at the MCHC), racial and other tensions among the inmates, assaults on inmates, and threats of inciting riot prompted defendant to issue a memorandum informing all inmates of newly imposed restrictions designed to address the situation. See Affidavits of Superintendent Carole Anderson, Lieutenant Jeffrey Croft, and Sergeant David Hassett. See generally Bell v. Wolfish, 441 U.S.

2

520, 545-48 (1979); Turner v. Safley, 482 U.S. 78, 89-91 (1987); Rowe v. DeBruyn, 17 F.3d 1047, 1049 (7th Cir. 1994).

The newly imposed regulations established, among other things, revised procedures governing attendance at rehabilitative programs (including church services and Bible study) by inmates in dayroom no. 1. Specifically, those inmates were required to sign up in advance to attend any rehabilitative program. Additionally, if more than five inmates from dayroom no. 1 (the maximum security group) sought to attend any given program, appropriate arrangements would be made for a separate session of that program to be held in the library for those inmates only. If, however, five or fewer inmates from dayroom no. 1 signed up, that smaller group would be permitted to join the general population inmates and attend the program in the visiting room.

In her affidavit, defendant represents that these policies were implemented in response to specific instances of violence within the MCHC and were designed to achieve legitimate security and penological goals. Among other things, they were designed to avoid situations in which more than five high-security inmates from dayroom no. 1 mixed with general population inmates. Nothing submitted by plaintiff in any way undermines those assertions or suggests that the penological goals sought to be advanced by those policies are not legitimate.

3

When plaintiff arrived at MCHC those policies were still in effect. On December 1, 1997, Lt. Jeffrey Croft issued a follow-up memorandum to all inmates in dayroom no. 1, reminding them that if they wished to attend any of the facility's rehabilitative programs, they had to first submit a request in writing. The next day, plaintiff claims that he "asked to go to Bible Studies and was denied." Complaint, at 2. He says that he was told to submit a written request slip to Lt. Croft, which he claims to have done on December 8, 1997, (implicitly conceding that he failed to comply with the policy by submitting a timely written request to attend the Bible study session held on December 2). Id. Subsequently, on December 9 and 16, plaintiff claims to have asked whether he was on the list of inmates who would be permitted to attend Bible study. On both occasions, he says he was informed that he was not on the list.

Thus, plaintiff's sole complaint appears to be that he was unconstitutionally denied access to the Bible study classes which met on December 2, 9, and 16, 1997. Plaintiff admits that during the period in question, he submitted only one written request to attend Bible study: the request submitted on December 8, 1997. See, e.g., Plaintiff's declaration in opposition to summary judgment at paras. 13-17.[1]

_____

[1] Perhaps not coincidentally, plaintiff first complained that he was being denied the right to attend Bible study during a period in which he was seeking a transfer out of MCHC. In support of his requested transfer, plaintiff apparently claimed, among other things, that his constitutional right to freely

4

## Discussion

Claims against individuals in their "official capacity" in §
1983 suits "generally represent only another way of pleading an
action against an entity of which an officer is an agent."
Kentucky v. Graham, 473 U.S. 159, 165 (1985)(quoting Monell v.
New York City Dep't of Social Servs., 436 U.S. 658, 690 n.55
(1978)).  "In order to prevail on an 'official capacity' claim,
[plaintiff] would have to show that the particular governmental
entity had an unconstitutional custom or policy, . . . which its
representatives were executing with at least the tacit approval
of governmental policymakers."  Reid v. State of New Hampshire,
56 F.3d 332, 337 (1st Cir. 1995) (citing Monell, 436 U.S. at
690).

In support of her motion for summary judgment, defendant has
submitted MCHC records demonstrating that during each week
between August 12, 1997 (immediately after plaintiff's
incarceration at MCHC began) and May 13, 1998 (immediately prior
to plaintiff's transfer from MCHC), when plaintiff complied with

---

practice his religious beliefs was being violated.  See, e.g.,
Exhibit G to plaintiff's objection (document no. 70).  See also
Affidavit of Superintendent Carol Anderson (attached to document
no. 32) at para. 6 ("Mr. Rowe wrote to me on several occasions
during the period of his incarceration expressing his
dissatisfaction with virtually every condition of his confinement
at the [MCHC].  In these communications, Mr. Rowe repeatedly
asked to be transferred from the facility.  I believe Mr. Rowe
filed this litigation in order to accomplish that end, since he
was fully aware of the procedures for attending facility
programs, but engineered this suit to suggest that his
constitutional rights are being violated.")

5

the procedures for attending rehabilitative programs, he was permitted to attend (on a few occasions, although his name was on the sign-up list and he was authorized to attend, it appears that plaintiff failed to attend). When plaintiff failed to comply with the MCHC procedures, he did not (and, presumably, was not permitted to) attend the sessions. Defendant says that of the 37 sessions held during that period, plaintiff attended 18. He signed up for, but neglected to attend 5. And he simply failed to submit a timely request to attend the remaining 14. Thus, based upon the materials submitted by defendant, it is apparent that when plaintiff submitted a timely request to attend Bible study he was authorized to attend that session and either actually attended or voluntarily chose to absent himself.

To the extent that plaintiff generally challenges the policy requiring advanced sign-up for attendance at Bible study sessions, as an unconstitutional restriction of his First Amendment rights, he has failed to support that claim. Nor has he identified any evidence which might arguably be said to create a trial-worthy question of fact. Plainly, as to that claim, defendant is entitled to judgment as a matter of law. See, e.g., Washington v. Harper, 494 U.S. 210, 223 (1990); Turner v. Safley, 482 U.S. at 89.

As to plaintiff's claim that he was denied access to Bible study on three specific occasions, records submitted by defendant

6

show (and plaintiff implicitly concedes) that he did not sign-up for the Bible study session held on December 2, 1997.  So, in accordance with legitimate prison security regulations, he was not authorized to attend the December 2 session.  That claim warrants no further discussion.

The same is true with regard to the Bible study session held on December 16, 1997.  As noted above, plaintiff admits that he failed to submit a written request to attend the Bible study session held on that date.[2]  In an effort to avoid summary judgment (based upon his acknowledged failure to comply with defendant's written policy), plaintiff makes two claims.  First, he suggests that he was unaware of the policy, saying that his copy of the Lt. Croft's December 1, 1997 follow-up memorandum had been given to his cell-mate.  See Plaintiff's declaration in opposition to summary judgment at para. 13.  Even if that were true, plaintiff was certainly aware of Lt. Croft's memorandum by December 2, when he was specifically reminded that he could not attend any rehabilitative program unless he first submitted a timely written request to attend.  Id.

_____

[2]     During December of 1997, plaintiff concedes that he submitted only a single written request (on December 8, 1997) to attend Bible study.  That is consistent with the evidence proferred by defendant and explains why plaintiff's name appeared on the sign-up sheet only on December 9, 1997.  It also explains why he was not authorized to attend the sessions held on December 2 and December 16, 1997.  Consistent with defendant's written policy, only inmates who had submitted written requests to attend rehabilitative programs were permitted to participate in those programs.

Next, plaintiff seems to suggest that he should have been permitted to attend the sessions on December 2 and 19 (notwithstanding his failure to submit a written request), because "the normal practice prior to the issuance of the memo on 12/1/97 was to call the control room and [orally] request permission after Bible study was announced." Id. Again, crediting plaintiff's claims as true, they do little to advance his situation. Even if prior practice had been inconsistent with defendant's written policy (and inmates were allowed to circumvent the formality of submitting written requests), plaintiff can hardly complain when he was notified on December 1 (or, at the latest, on December 2) that defendant's policy of requiring written sign-up slips would be enforced. Lt. Croft's memorandum specifically provided plaintiff with that notice and plaintiff's efforts to rely upon prior, less stringent practices are unavailing.

Finally, with regard to the session held on December 9, 1997, the record clearly reflects the fact that plaintiff submitted a written request to participate. Consistent with defendant's policy, the record also shows that plaintiff's name was on the list of inmates authorized to attend. See Defendant's exhibit I (attached to document no. 32). Plaintiff and six other dayroom no. 1 inmates signed-up for the Bible study session on December 9, 1997, but only four of the seven actually attended. Plaintiff was one of three dayroom no. 1 inmates whose names

8

appear on the sign-up sheet and who were authorized, but elected not to attend. Thus, even if, as plaintiff alleges, defendant was enforcing an unconstitutional policy of permitting only a maximum of five dayroom no. 1 inmates to attend Bible study classes, he cannot demonstrate that the alleged policy prevented him from attending the December 9 session; even under plaintiff's scenario, only four of five available positions were taken and he could have attended as the fifth dayroom no. 1 inmate.[3]

---

[3] At the pretrial conference, the court questioned whether plaintiff was denied access to Bible study on December 9, 1997 because, although his name appears on the sign-up sheet, it is in "slot" 6, suggesting (as plaintiff claims) the possibility that only the first five dayroom no. 1 inmates to have signed-up were permitted to attend (and that, contrary to defendant's policy, accommodations were not being made to permit more than five dayroom no. 1 inmates to attend rehabilitative programs). Supplemental documentation submitted by defendant, however, demonstrates that this was not the case. As noted above, seven dayroom no. 1 inmates signed-up for the Bible study session held on December 9, 1997 (in order, they were: Brown, Spataro, Encarnacion, Maldonado, Green, Rowe (plaintiff), and Guerrero). Of those seven, only four chose to attend the session and, among those in attendance was J.R. Guerrero, whose name appears in "slot" seven on the sign-up sheet. Thus, those records demonstrate that: (1) a separate Bible study session was not held on December 9, 1997 because fewer than five dayroom no. 1 inmates actually chose to attend; and (2) the timing of an inmate's request to attend the session (i.e., one of the first five vs. anyone filing a later request) had no bearing on whether the inmate was permitted to attend. This documentation directly refutes plaintiff's unsupported and conclusory allegations to the contrary.

The record contains several other examples which undermine plaintiff's claim. For example, on April 14, 1998, William ("Bill") Wheeler was the sixth dayroom no. 1 inmate to sign-up for Bible study and yet, as the attendance sheets demonstrate, he was permitted to attend the session. Compare Exhibit A to plaintiff's objection (document no. 69) with Exhibit L to defendant's motion for summary judgment (document no. 32). And, as to plaintiff's claim that these documents are false, unreliable, and/or created specifically for this litigation, little discussion is warranted other than to note that his claim

In opposition to defendant's submissions, plaintiff has offered no evidence to support his claim that he was unconstitutionally deprived of the right to attend Bible study classes (on the dates alleged or otherwise) and, instead, relies solely on vague, conclusory, and unsupported claims of official misconduct. More is necessary to defeat defendant's motion for summary judgment. See, e.g., Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7-8 (1st Cir. 1990). Moreover, at the pretrial conference held on December 17, 1998, the court specifically told plaintiff that his submissions in opposition to defendant's motion for summary judgment were insufficient. Rather than simply grant defendant's motion, however, the court informed plaintiff (both orally, and later in writing) that it would defer ruling until after he had been given the opportunity to supplement his filings. See Order dated December 17, 1998 (document no. 46) (confirming that plaintiff would be given additional time to supplement his opposition to summary judgment before the court ruled on that motion).

Plaintiff's supplemental filing (document no. 70) does little to advance his claims. Defendants, on the other hand, have submitted additional documentation which demonstrates that, consistent with defendant's legitimate policy, when more than five dayroom no. 1 inmates submitted requests to attend either church services or Bible study, arrangements were made to

is wholly without support in the record.

10

accommodate them in a separate session within the confines of dayroom no. 1.  See, e.g., Attendance records for church services on March 2, April 27, May 4, May 18, May 25, June 1, August 24, October 5, and November 23, 1997; Attendance records for Bible study on November 7, 1997.

Among other things, those records show that on November 7, 1997, a separate Bible study session was scheduled, in order to accommodate the six dayroom no. 1 inmates who sought to attend. Additionally, the records reveal that plaintiff was one of the six dayroom no. 1 inmates in attendance at that Bible study session (suggesting, notwithstanding his assertions to the contrary, he was well aware that, consistent with defendant's written policy, special arrangements were made in those situations in which more that five dayroom no. 1 inmates sought to attend a rehabilitative program and the attendance of more than five dayroom no. 1 inmates at any such program was not prohibited).  In fact, sign-up sheets for rehabilitative programs submitted by plaintiff for March and April of 1998 (see Exhibit A to document no. 70) show that more than five sign-up "slots" were provided for Bible study classes, again undermining his claim that only five dayroom no. 1 inmates were permitted to attend those sessions (attendance records also show that although plaintiff had signed-up for those sessions, he did not attend). Finally, to the extent that plaintiff asserts that he was unaware of the policy requiring advanced sign-up, the summary judgment

11

record refutes any such claim (among other things, plaintiff admits having been reminded, on December 2, that he must submit a written request to attend any rehabilitative program).

Plaintiff has produced nothing (other than unsupported assertions) to suggest that, despite having complied with the legitimate MCHC policy which required dayroom no. 1 inmates to sign-up in advance for all rehabilitative programs, he was nonetheless denied access to Bible study on the dates alleged. Perhaps more importantly, he has submitted nothing which might even imply that he was the victim of an unconstitutional custom or policy at the MCHC which unlawfully restricted his First Amendment rights.

## Conclusion

Plaintiff has failed to show any trial-worthy question as to whether defendant's policy of requiring advanced written sign-ups in order to attend Bible study sessions unconstitutionally abridged his First Amendment rights. And, to the extent that plaintiff challenges defendant's alleged "denial" of his right to attend Bible study classes on December 2, December 9, and/or December 16, 1997, defendant is entitled to judgment as a matter of law. The record reveals (and plaintiff implicitly concedes) that he failed to submit a written request to attend the Bible study session on December 2, 1997, as required by MCHC written policy. With regard to the session held on December 9, 1997,

12

plaintiff's name appears on the list of those inmates who were authorized to attend. And, finally, as to the December 16, 1997, session, plaintiff again concedes that he failed to submit a written request to attend, as required by defendant's policy and as reiterated in Lt. Croft's memorandum of December 1, 1997.

Having been clearly and repeatedly informed that inmates must submit written requests to attend rehabilitative programs, plaintiff cannot complain that his constitutional rights were violated when he knowingly failed to comply with that reasonable and justifiable requirement. Even if, prior to December 1, 1997, that policy had been loosely enforced (for example, by allowing inmates to make oral, rather than written, requests to attend), plaintiff acknowledges that on or before December 2, 1997, he was specifically notified that written request slips would be required in the future. He cannot convert his knowing (and, perhaps, even purposeful) failure to comply with that requirement into a federal constitutional claim.

For the foregoing reasons, defendant's motion for summary judgment (document no. 32) is granted. Plaintiff's motion for summary judgment (document no. 21) is denied. Plaintiff's remaining motions (document no. 23, 36, and 37) and defendant's motion in limine (document no. 44) are all denied as moot. The Clerk of the Court is directed to enter judgment in accordance with the terms of this order and close the case.

13

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

April 13, 1999

cc:  David B. Rowe
     Dyana J. Crahan, Esq.