**Titus HENDERSON, Plaintiff,**

v.

**David BELFUEIL, Defendant.**

No. 03–C–729–C.

United States District Court,
W.D. Wisconsin.

Jan. 31, 2005.

Titus Henderson, pro se.

Charles D. Hoornstra, Assistant Attorney General, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary, injunctive and declaratory relief brought under 42 U.S.C. § 1983. Plaintiff Titus Henderson, who is presently confined at the Wisconsin Secure Program Facility in Boscobel, Wisconsin, contends that defendant David Belfueil took a blood sample from him in violation of his rights under the Fourth and Eighth Amendments. In an order dated March 16, 2004, I granted plaintiff leave to proceed *in froma pauperis* against seven other named defendants and three unnamed defendants. I granted summary judgment in favor of these other defendants in an order dated December 10, 2004. The only remaining claims in this case are two against defendant Belfueil, on which defendant Belfueil has moved for summary judgment. Jurisdiction is present under 28 U.S.C. § 1331.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## FACTS

Plaintiff Titus Henderson was incarcerated at Redgranite Correctional Institution at all relevant times. Defendant David Belfueil is and was at all relevant times a detective with the Redgranite Police Department. For the past three years, defendant has served as the liason officer between the Redgranite Correctional Institution and the Redgranite Police Department. In that capacity, he is the point of contact when an officer at the corrections facility suspects that an inmate has committed a crime. When a corrections officer contacts defendant to investigate a suspected crime, defendant interviews witnesses and victims in the correctional facility's hearing room.

On September 18, 2002, plaintiff was involved in an altercation with Tronnie Dismuke, another inmate at the Redgranite facility. After the incident, Dismuke had blood on his finger and back. Several officers conducted a search of the shower area where the attack took place and found a pair of tweezers attached to a pen in a laundry basket. Dismuke identified the item as the weapon plaintiff had used to strike him in the back. Plaintiff denied having used the instrument.

A corrections officer contacted defendant to inform him of the fight. Defendant interviewed plaintiff at the facility hearing room on September 26, 2002. He read plaintiff his Miranda rights and obtained plaintiff's signature acknowledging that defendant had done so. (The parties dispute whether plaintiff asked for an attorney or said that he did not want to talk to defendant, whether defendant told plaintiff that he was under arrest and whether plaintiff consented to give a blood sample. Because facts must be construed in favor of the non-moving party, I will accept as true for the purpose of deciding this motion plaintiff's sworn statement that he asked for an attorney and indicated that he would not talk to defendant, that defendant told him he was under arrest

and that plaintiff told defendant that he would need a warrant in order to get a blood sample from him.)

On October 1, 2002, two facility guards brought plaintiff to a medical examination room. Defendant was standing in the hallway outside of the exam room with two corrections captains, David Tarr and Scott Eckstein. As plaintiff approached the room, he asked defendant what was happening. (Again, the parties provide different versions regarding defendant's response. According to defendant, he told plaintiff that a blood sample would be taken from him for DNA testing and reminded plaintiff that he had agreed to provide the sample. By plaintiff's account, defendant said plaintiff was there so that a blood sample could be taken; when plaintiff asked defendant to show the search warrant that he said he would get, defendant looked to Tarr who ordered the two guards to hold plaintiff down on an examining table while a nurse drew a blood sample. For the purpose of resolving this motion, I must accept plaintiff's version as true.)

Plaintiff told defendant that he did not want to provide a blood sample. Defendant responded by telling plaintiff that he had discussed the situation with the district attorney and that he would be able to secure a search warrant authorizing the test if plaintiff were to deny that he had already consented to it. (The parties dispute whether plaintiff consented to the test in response to defendant's comment. Plaintiff contends that he insisted defendant would have to get a search warrant; defendant swears plaintiff consented to the blood test. In addition, it is not clear whether force was used in taking the sample. Plaintiff avers two officers held him down; defendant swears plaintiff submitted to the test without resistance or use of force. For the purpose of deciding this motion, I must accept as true plaintiff's averments that he did not consent to the blood test and that prison guards used physical force to obtain the blood sample.)

Pursuant to Wisconsin law, the state's crime laboratory bureau maintains a DNA database in the Milwaukee crime laboratory. Convicted felons are required by state law to submit a biological sample to the bureau. DNA profiles are made from these samples and the results stored in the database. After the profile is made, the bureau destroys the samples. Pursuant to this law, plaintiff provided a DNA sample approximately one year before he got into the fight with inmate Dismuke. Defendant knew that a profile of plaintiff's DNA was stored in this database. However, from his experience and training, defendant knew that this profile was not available for his use in a specific criminal investigation, such as the investigation he was conducting at the institution. Instead, it is used to identify suspects. During the course of an investigation, a law enforcement agency may submit biological material from a crime scene to the laboratory where it is screened for matches in the database. If a match is found, the bureau contacts the law enforcement agency. The agency handling the investigation must then obtain a new DNA sample from the identified suspect, which is referred to as the "standard." The bureau compares the standard to the biological material found at the crime scene.

## OPINION

### A. *Eighth Amendment*

■ " '[T]he unnecessary and wanton infliction of pain,' " including unnecessary use of force, constitutes cruel and unusual punishment forbidden by the Eight Amendment. *Whitley v. Albers,* 475 U.S. 312, 319, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 51

892

L.Ed.2d 711 (1977)). Plaintiff contends that defendant violated his Eighth Amendment rights by causing a needle to be forcibly stuck in plaintiff's arm. Because "gratuitous infliction of pain always violates contemporary standards of decency," even an insignificant injury can violate an inmate's Eighth Amendment rights. *Calhoun v. DeTella,* 319 F.3d 936, 939 (7th Cir.2003). In granting leave to proceed on this claim, I advised plaintiff that he might be able to prove an Eighth Amendment violation if he could show that defendant ordered the blood test without any legitimate governmental interest and for the purpose of hurting plaintiff. *See id.* (actions " 'so totally without penological justification that it results in the gratuitous infliction of suffering' " violate Eighth Amendment) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 183, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)).

■ As I noted in the order granting plaintiff leave to proceed, defendants "may have had any number of legitimate reasons for taking the blood sample [but] none is suggested in [plaintiff's] complaint." Ord., dkt. # 5, at 7. Upon further development of the facts, the parties do not dispute that the blood sample was taken not to injure or cause plaintiff pain, but to aid in a criminal investigation. It is well settled that the government has a legitimate interest in maintaining peace within the prisons and insuring the safety of other inmates. *Rowe v. DeBruyn,* 17 F.3d 1047, 1052–53 (7th Cir.1994). In addition to the institutional goal of maintaining internal security, there is a legitimate governmental interest in curbing criminal recidivism. *Id.* at 1049. Pursuing criminal investigations of violent disturbances furthers these objectives by deterring future incidents.

Plaintiff's only argument in defense of his Eighth Amendment claim is that defendant could not have had a "penological" interest in investigating the fight because he was an employee of the Redgranite Police Department and not the Department of Corrections. This is not a valid argument. It should go without saying that police officers have a legitimate interest in insuring that criminals are punished for their crimes and deterred from future criminal activity. Moreover, police officers have an interest in maintaining peace and security within their jurisdictions; in this case, the correctional facility was located within the town of Redgranite and thus, within defendant's jurisdiction.

■ However, plaintiff's argument does raise the question whether his claim against defendant is appropriate under the Eighth Amendment at all. In general, criminals who have been convicted and are serving a sentence are protected under the Eighth Amendment's guarantee against cruel and unusual punishments, *Anderson v. Gutschenritter,* 836 F.2d 346, 348 (7th Cir.1988), while the due process clause provides protection for those a state punishes without conviction, *Ingraham v. Wright,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Because the blood test was taken in relation to a crime for which plaintiff had not yet been convicted, plaintiff's claim is somewhat analogous to that of a pretrial detainee. Nonetheless, this question is purely academic. Even if I were to treat plaintiff's claim as arising under the Fourteenth Amendment (despite his status as an incarcerated criminal) the result would be the same because " § 1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test." *Henderson v. Sheahan,* 196 F.3d 839, 845 n. 2 (7th Cir.1999). Plaintiff's failure to adduce any evidence suggesting that defendant acted with the purpose of inflicting pain dooms his claim, regardless whether it is analyzed under the Eighth or Fourteenth Amendment. Thus, defendant

is entitled to summary judgement on this claim.

### B. *Fourth Amendment*

█ The Fourth Amendment protects citizens against unreasonable searches and seizures. Taking a blood sample is a search for Fourth Amendment purposes. *E.g., Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602, 618, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Schmerber v. California,* 384 U.S. 757, 767–68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Herzog v. Village of Winnetka, Ill.,* 309 F.3d 1041,–1044 (7th Cir.2002). Whether a search is "reasonable" is determined by balancing its intrusiveness to the individual against the government's legitimate interest in it. *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "Except in certain well-defined circumstances, a search or seizure ... is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *Skinner,* 489 U.S. at 619, 109 S.Ct. 1402; *see also Joy v. Penn–Harris–Madison Sch. Corp.,* 212 F.3d 1052, 1058 (7th Cir.2000).

█ Warrantless blood tests have been upheld against Fourth Amendment challenges under the "exigent circumstances" and "special needs" exceptions to the warrant requirement. In *Skinner,* the Supreme Court upheld a regulation of the Federal Railroad Administration requiring railway employees involved in certain train accidents to submit to blood, urine and breath tests to detect drug or alcohol abuse. The court reasoned that obtaining a warrant would frustrate the government's objective because "alcohol and other drugs are eliminated from the bloodstream at a constant rate." *Id.* at 623, 109 S.Ct. 1402. This kind of exigent circumstance does not exist in this case; plaintiff's DNA was not going to change in the time that it would take to obtain a war-

rant. Thus, the exception carved out in *Skinner* is not applicable.

█ In *Green v. Berge,* 354 F.3d 675 (7th Cir.2004), the court upheld a Wisconsin state law requiring convicted felons to furnish DNA samples to be stored in a databank used to solve past and future crimes. In doing so, the court invoked the special needs exception to the Fourth Amendment warrant requirement. *Id.* at 677. This exception applies when the government has an interest exceeding an ordinary law enforcement objective. *Id.* (citing *United States v. Kimler,* 335 F.3d 1132, 1146 (10th Cir.2003)). The court noted that "[a]lthough the state's DNA testing of inmates is ultimately for a law enforcement goal, it seems to fit within the special needs analysis the Court has developed for drug testing and searches of probationers' homes, since it is not undertaken for the investigation of a specific crime." *Id.* at 678. Thus, the reasoning validating the blood test in *Green* is also not applicable in this case.

█ There is a recognized exception for searches conducted with consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Basinski,* 226 F.3d 829, 834 (7th Cir.2000). However, the issue of consent is heavily contested in this case. This case pits defendant's word against that of plaintiff; deciding whose account is more credible is a task for the jury, not the court. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003). Because there is a genuine dispute as to a material fact, I will deny defendant's motion for summary judgment with respect to plaintiff's Fourth Amendment claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ORDER

IT IS ORDERED that defendant David Belfueil's motion for summary judgment is GRANTED with respect to plaintiff Titus Henderson's claim that his Eighth Amendment right to be free from cruel and unusual punishment was violated when defendant caused a blood sample to be drawn. FURTHER, IT IS ORDERED that defendant's motion is DENIED with respect to plaintiff's claim that defendant violated his Fourth Amendment right to be free from unreasonable searches and seizures.