17 F.3d 1047
 John S. ROWE, Plaintiff-Appellant,
v.
H. Christian DeBRUYN,* Individually and in his
official capacity as Commissioner, Indiana Department of
Corrections, Jack R. Duckworth, Individually and in his
official capacity as Superintendent, Indiana State
Reformatory, Michael J. Watsen, Individually and in his
official capacity as Correctional Lieutenant and the Chair
of the Conduct Adjustment Board, Indiana State Reformatory,
Lacy Morris, Individually and in his official capacity as
Correctional Officer and Member of the Conduct Adjustment
Board, Indiana State Reformatory, and Rick L. Robinson,
Individually and in his official capacity as an employee and
member of the Conduct Adjustment Board, Indiana State
Reformatory, Defendants-Appellees.
 No. 93-1141.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 26, 1993.
Decided March 2, 1994.
As Amended on Denial of Rehearing and
Suggestion for Rehearing En Banc
May 5, 1994.**
 
 Hamid Kashani (argued), Indianapolis, IN, for plaintiff-appellant.
 Thomas D. Quigley, Jon Laramore (argued), Office of the Atty. Gen., Federal Litigation, Indianapolis, IN, for defendants-appellees.
 Before ESCHBACH, RIPPLE, and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 When this case arose, John Rowe was a prisoner at the Indiana Reformatory at Pendleton. On July 29, 1991, prison officers charged Rowe with hitting another inmate, Michael Evans, on the head with a commissary issued "hot pot." Rowe was brought before a Conduct Adjustment Board ("CAB"), consisting of appellees Michael Watsen, Lacy Morris, and Rick Robinson. The CAB found that Rowe had violated prison rules by committing battery, but also found mitigating circumstances because Rowe acted in self-defense. The CAB therefore ordered Rowe to serve one year in disciplinary segregation, but then suspended the penalty of segregation.
 
 
 2
 Rowe's predicament began early in July 1991, when the Reformatory transferred Michael Evans to a cell adjacent to Rowe's cell. Rowe complained to prison staff about Evans' new cell assignment, apparently because he felt that Evans' proximity might cause trouble. Rowe's fears were soon substantiated. On July 18, Evans wrote Rowe a note demanding that Rowe go to Evans' cell the next morning and engage in sexual activities with him. In the note, Evans accused Rowe of sexually enticing him and threatened that if Rowe did not meet Evans' aroused expectations, "someone will get hurt and perhaps even die."
 
 
 3
 The next morning during "breakfast feed," Evans entered Rowe's cell. Rowe claims that Evans physically attacked him and attempted to rape him. Rowe yelled out for help, and in an alleged attempt to repel Evans, struck him repeatedly with the unheated hot pot. Another prisoner, Richard Perez, hearing shouts from Rowe's cell, ran in to break up the fight. He found the two men struggling. Perez pulled Evans from Rowe and then helped Rowe push Evans out of the cell. All three men were eventually disciplined.
 
 
 4
 Before the CAB, Rowe contended that he did not commit battery in violation of prison rules, on the ground that he acted in self-defense. The CAB found that Rowe had violated prison rules "regardless of [his] self-defense plea," reasoning that the Indiana Department of Corrections ("IDOC") does not recognize self-defense as a complete defense in a prison disciplinary proceeding. The CAB did acknowledge, however, that self-defense can be a mitigating factor, and it found that the circumstances surrounding the Evans incident mitigated Rowe's penalty of segregation.
 
 
 5
 Rowe sued various prison officials pursuant to 42 U.S.C. Sec. 1983, claiming that the IDOC's policy of denying prisoners the right to raise self-defense as a complete defense in disciplinary hearings deprived him of due process of law under the federal Constitution.[1] The district court granted the prison officers' motion for summary judgment, holding that because Rowe's penalty of segregation was suspended, the adverse disciplinary ruling against Rowe implicated no protected liberty interest under the Fourteenth Amendment. The district court alternatively held that even if the defendants deprived Rowe of a protected liberty interest, the procedures attendant upon the deprivation were reasonably related to "an essential penological objective" and thus were constitutionally sufficient.
 
 Discussion
 
 6
 The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law...." We begin by noting several principles that govern our review of prisoners' constitutional claims. A prisoner is "not wholly stripped of constitutional protections when he is imprisoned for crime," Wolff v. McDonnell, 418 U.S. 539, 554, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), and, specifically, he does retain some due process rights under the Fourteenth Amendment. See, e.g., id. "There is no iron curtain drawn between the Constitution and the prisons of this country." Id. Imprisonment, however, necessarily entails that an inmate lose many of the rights ordinary citizens enjoy. Id.; Hudson v. Palmer, 468 U.S. 517, 525, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984). Furthermore, prisons must be able to curtail a prisoner's constitutional rights not only to further correctional goals, such as retribution or deterrence, but also to serve institutional objectives, the most basic of which is the internal security of the prisons themselves. See Pell v. Procunier, 417 U.S. 817, 823-24, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).
 
 
 7
 We base our review of prison discretion upon the recognition that a prisoner's liberty interests are significantly restricted by the fact of his incarceration, and that prison officials must have broad discretion to dictate policies that promote order and safety for inmates and correctional staff. "Running a prison is an inordinately difficult undertaking that requires expertise ... peculiarly within the province of the legislative and executive branches of government.... [S]eparation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities." Turner v. Safley, 482 U.S. 78, 85-86, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987).
 
 
 8
 With these principles in mind, we consider whether prison officials impermissibly infringed Rowe's Fourteenth Amendment rights when they denied him the right to assert self-defense as a complete defense to culpability in a CAB disciplinary proceeding.[2] Although the district court decided Rowe's claim as if it were a procedural due process claim,[3] we understand Rowe's constitutional challenge to fall under the rubric of substantive due process.
 
 I.
 
 9
 For clarity, we should identify the kinds of claims that may arise when, as Rowe does in this case, an inmate simply alleges that a prison policy "deprives him of his due process rights under the Fourteenth Amendment." In a previous prisoners' rights case, we noted that "the due process clause of the fourteenth amendment is the source of three separate constitutional protections that may serve as the basis of a section 1983 claim against the state and its agents and employees." Colon v. Schneider, 899 F.2d 660, 666 (7th Cir.1990).
 
 
 10
 First, the Clause incorporates specific protections defined in the Bill of Rights.... Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, [337-38, 106 S.Ct. 662, 677-78, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring) ]. As to these two types of claims, the constitutional violation actionable under Sec. 1983 is complete when the wrongful action is taken.... The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A Sec. 1983 action may be brought for a violation of procedural due process, but ... [i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.... [Id.] The constitutional violation actionable under Sec. 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.
 
 
 11
 Colon, 899 F.2d at 666 (citing Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)).
 
 
 12
 In this case, clearly Rowe does not allege that the right of self-defense is in the Bill of Rights, incorporated by the Fourteenth Amendment to apply to the States. Rowe also does not claim that the prison could deprive him of his right of self-defense so long as they provided him with notice and a hearing; in fact, our review of the record indicates he did not present any evidence of insufficient process at all.
 
 
 13
 Rather, he maintains that the IDOC's policy deprived him of a "fundamental liberty," and that "no man should be wrongfully convicted to satisfy the security concerns of a governmental entity." Thus, Rowe is actually arguing against the state's ability to deprive him of his right to claim self-defense at all. Such a claim is most properly characterized as substantive due process. See Colon, 899 F.2d at 670-71 (holding that prisoner who alleged Fourteenth Amendment violation but who could not prove constitutionally deficient process actually stated a substantive, rather than procedural, due process claim). See also Daniels v. Williams, 474 U.S. at 339, 106 S.Ct. at 679 (Stevens, J., concurring) ("[A] complaint does not state a valid procedural due process objection--and a valid Sec. 1983 claim--if it does not include a challenge to the fundamental fairness of the State's procedures.").
 
 
 14
 Rowe principally suggests that the constitutional right to self-defense for prisoners derives from one of the enumerated defenses to culpability set forth as a part of the Indiana Criminal Code, Ind.Code Ann. Sec. 35-41-3-2. However, Rowe also refers to the right to self-defense as an "essential" or "basic" liberty, one that "predates all laws known to ... mankind." We infer, that by using such terms, Rowe also urges the position that the right to self-defense is a fundamental right without a specific textual basis, inherent in the Due Process Clause itself.
 
 
 15
 If found to exist, such constitutional rights we review according to the standard set out in Hadi v. Horn, 830 F.2d 779 (7th Cir.1987). "Under this standard, 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' " Id. at 783-84 (quoting Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 282 (1987); O'Lone v. Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 64 (1987)).
 
 
 16
 First, we must examine whether there exists a constitutional right of self-defense. We believe that Rowe's argument regarding the provision in the Indiana Criminal Code, Ind.Code Ann. Sec. 35-41-3-2, which provides that "[n]o person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary," is misguided. While it is true that in procedural due process claims, "[a] liberty interest ... may be created by statute or binding administrative regulation," Castaneda v. Henman, 914 F.2d 981, 983 (7th Cir.1990), it is because in those claims, the deprivation of a liberty interest itself is not unconstitutional. In procedural due process, it is the lack of predeprivation procedure that offends the Constitution. See, Daniels v. Williams, 474 U.S. at 337, 106 S.Ct. at 678 (Stevens, J., concurring) (in procedural due process, "the deprivation may [even] be entirely legitimate--a state may have every right to discharge a teacher or punish a student--but the State may nevertheless violate the Constitution by failing to provide appropriate procedural safeguards."). This is not true in Rowe's case, which supposedly challenges the violation of a substantive federal right.
 
 
 17
 In Colon v. Schneider, 899 F.2d at 660, we held that a prisoner who alleged that he was maced in violation of the Wisconsin Administrative Code could not successfully "transmute [that] violation of state law into a constitutional violation" by claiming that the state regulation created a substantive federal right under the Due Process Clause of the Fourteenth Amendment. Colon attempted to bring his Sec. 1983 action under the doctrine of procedural due process; however, he failed to allege that the state deprived him of any constitutionally required procedural protections. The court thus held that Colon had stated a substantive, rather a procedural, claim. The court then noted that the actions of a state entity are:
 
 
 18
 subject to constitutional infirmity to the same but no greater extent than if the action were taken by the state legislature. Its legality under the state statute can neither add to nor subtract from its constitutional validity. Mere violation of a state statute does not infringe the federal Constitution. And state action, even though illegal under state law, can be no more or less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature.
 
 
 19
 Id. at 672 n. 19 (quoting Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944)).
 
 
 20
 The flaw in Rowe's claim is very similar to the one in Colon. As in that case, appellant's reliance here on Ind.Code Sec. 35-41-3-2 is merely tantamount to alleging that the appellees have violated state law. "The violation of state law is not itself the violation of the Constitution." Archie v. City of Racine, 847 F.2d 1211, 1217 (7th Cir.1988) (en banc), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). We need not decide whether Sec. 35-41-3-2, which relates to criminal prosecutions, actually creates a right to self-defense for prisoners in administrative disciplinary hearings, in order to decide that a state statute is insufficient to "constitutionalize" the right allegedly embodied in it.[4] Accordingly, we hold that the Indiana statute cannot create a substantive constitutional right to self-defense.
 
 
 21
 Next, we consider if the right to self-defense is a fundamental constitutional right within the Due Process Clause itself. We conclude that it is not. First, we find no precedent establishing a constitutional right of self-defense in the criminal law context, see White v. Arn, 788 F.2d 338 (6th Cir.1986), cert. denied, 480 U.S. 917, 107 S.Ct. 1370, 94 L.Ed.2d 686 (1987) (holding that in criminal cases, there is no constitutional right to self-defense founded in the Eighth, Ninth, and Fourteenth Amendments, and that a state may require a defendant to prove self-defense as an affirmative defense to obtain acquittal), although some courts have commented on the matter, see generally, Griffin v. Martin, 785 F.2d 1172, 1187 n. 37 (4th Cir.), aff'd & op. withdrawn, 795 F.2d 22 (1986) (en banc), cert. denied, 480 U.S. 919, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987) (stating in dictum, "It is difficult to the point of impossibility to imagine a right in any state to abolish self defense altogether, thereby leaving one a Hobson's choice of almost certain death through violent attack now or statutorily mandated death through trial and conviction of murder later."); Isaac v. Engle, 646 F.2d 1129 (6th Cir.1980) (en banc) (Merritt, J. dissenting on other grounds), rev'd, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) ("I believe that the Constitution prohibits a state from eliminating the justification of self-defense from its criminal law....").
 
 
 22
 Furthermore, even a substantive due process right that has been clearly established in Fourteenth Amendment criminal jurisprudence may not necessarily apply to prison inmates in disciplinary proceedings. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556, 94 S.Ct. at 2975. The Supreme Court has "settled that a prison inmate 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.' " Turner, 482 U.S. at 96, 107 S.Ct. at 2265 (quoting Pell v. Procunier, 417 U.S. at 822, 94 S.Ct. at 2804).
 
 
 23
 Given that there is virtually no support for such a judicially created constitutional right in the criminal law, we believe that manufacturing such a right for application in non-criminal, prison disciplinary proceedings is even less justified. This is particularly so where prison authorities daily face an intractable problem of violence within the prison walls. A right that threatens to undermine prison discipline by encouraging inmates to combat violence with more violence subverts a core prison function of ensuring order and safety within the institution. Without disputing or passing on the primacy of the "right" of self-defense in a criminal law context, we determine that in view of our deference to the administrative discretion of prison authorities, prisoners do not have a fundamental right to self-defense in disciplinary proceedings.
 
 
 24
 Even if Rowe did have a constitutional right of self-defense, the IDOC's policy to deny a prisoner the right to raise it as a complete defense is reasonably related to legitimate penological interests. The policy purportedly advances prison security by discouraging all physical violence amongst inmates. It acts as a didact by warning prisoners that violence against another inmate is a unilaterally condemned and perpetually sanctionable violation of prison rules. It also acts as a deterrent because a prisoner who is caught fighting cannot reliably exculpate himself later with a claim of self-defense. In addition, the IDOC's policy does not leave a prisoner with a genuine claim of self-defense without an alternative means of raising the defense in a CAB proceeding, if a disciplinary charge is brought against him. The IDOC policy allows a CAB to consider self-defense in mitigation. In this case, the mitigating factor of self-defense led to a suspension of Rowe's disciplinary segregation, so that the record of rule violation and the possibility of penalty reinstatement were the only consequences Rowe suffered from the CAB's adverse finding. Given that prison security and the reduction of violence are certainly legitimate penological interests, and that appellees' self-defense policy does not absolutely deprive a prisoner of his ability to prove and benefit from a claim of self-defense, we conclude that the IDOC's policy would not have impermissibly infringed Rowe's constitutional rights.
 
 II.
 
 25
 There is a way in which Rowe's claim may be cast as a procedural due process claim. We may convert all of Rowe's arguments for the right to self-defense into an allegation that the CAB proceeding itself was constitutionally deficient procedure because it did not admit self-defense as a complete defense. None of the parties seem to view the issue in this way in their briefs. As we mentioned above, Rowe makes no argument that he received constitutionally deficient procedure before the appellees deprived him of a protected liberty interest. However, the district court bases its findings at least in part on procedural due process grounds, so we will briefly analyze Rowe's claim from a procedural viewpoint.
 
 
 26
 In Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), the Supreme Court set out a two step analysis for reviewing the procedural due process claims of prisoners. "[T]he first [step] asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally deficient." Id. at 460, 109 S.Ct. at 1908.
 
 
 27
 The district court held that because Rowe's penalty had been suspended, and he "suffered no tangible punishment as a result of the disciplinary proceeding," the CAB's sanction did not implicate a protected liberty interest. We disagree that Rowe's penalty of one year of disciplinary segregation was insufficient to trigger the procedural protections guaranteed by the Fourteenth Amendment. In our view, Rowe's punishment, although suspended, constitutes "consequences visited on the prisoner that are qualitatively different from the punishment characteristically suffered by a person convicted of crime." Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980). The case the district court cites, Gaston v. Taylor, 946 F.2d 340 (4th Cir.1991) (en banc), is inapposite here. In Gaston, the prisoner received a 15 day segregation penalty that was suspended contingent on the requirement that the prisoner remain on good behavior for 90 days. Rowe's penalty was a full year of segregation, and the record does not reveal whether his penalty will be forgiven or withdrawn for any reason until the end of his prison time. We do not think that prison officials may find a prisoner in violation of prison rules, then subject him to the open-ended threat of a year of disciplinary segregation without implicating a protected liberty interest.
 
 
 28
 We thus turn to examine whether Rowe received constitutionally sufficient procedure. The only complaint we can divine Rowe as having with the CAB proceeding is that he was unable to assert self-defense as a complete defense. He received notice, a hearing, and a written statement of evidence relied upon and reasons for the disciplinary action.
 
 
 29
 "Due process is a flexible concept, the import of which is to provide an opportunity to be heard." Castaneda v. Henman, 914 F.2d 981, 985 (7th Cir.1990). The Supreme Court set the standard governing the procedural protections required by the Due Process Clause in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Mathews established that due process analysis must "weigh the risk of an erroneous deprivation of [a private interest] through the procedures used" and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335, 96 S.Ct. at 903. Rowe may be said to have been deprived of his opportunity to be heard with regard to his defense of self-defense. However, the IDOC's pre-punishment procedures accommodated Rowe by allowing him to raise self-defense in mitigation. Thus, Rowe was not wholly deprived of the defense of self-defense--indeed, he was allowed to argue and present evidence on the issue. Rowe was barred simply from using self-defense as a complete justification to his disciplinary charge of battery. This accommodation of Rowe, weighed against the IDOC's interest in refusing to recognize self-defense as a complete defense in order to discourage prison violence, allows the self-defense policy to survive constitutional scrutiny. We conclude that even if Rowe were to have stated a procedural due process claim, the IDOC's policy regarding self-defense does not render the CAB proceeding insufficient procedure.
 
 Conclusion
 
 30
 For the foregoing reasons, the district court's grant of summary judgment to the appellees is AFFIRMED.
 
 
 31
 RIPPLE, Circuit Judge, dissenting.
 
 
 32
 While reciting the admonition of Wolff v. McDonnell, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), that "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime," and reminding us that there "is no iron curtain drawn between the Constitution and the prisons of this country," id. at 555-56, 94 S.Ct. at 2974, the court today holds that the Constitution of the United States permits a state to leave, under all circumstances, an incarcerated person without any lawful recourse against even the most inhuman and vile attack on that person's life or bodily integrity. It sanctions the decision of the state government of Indiana to require that any person incarcerated under its authority submit, no matter what the circumstances, to any threat to life or bodily integrity without any recourse to self-defense of any kind. This holding renders the phrases of Wolff meaningless poetry.
 
 
 33
 I do not believe that it is hyperbole to characterize the position of the majority as a novel one. As the majority implicitly admits, no court has ruled directly on whether the state may, consistent with the due process clause, impose, as a matter of absolute liability, a sanction for protecting oneself from death or bodily harm. There is indeed authority for the proposition that there is no "constitutional right of self-defense, founded in the Eighth, Ninth, and Fourteenth Amendments, which an accused cannot be required to prove." White v. Arn, 788 F.2d 338, 347 (6th Cir.1986), cert. denied, 480 U.S. 917, 107 S.Ct. 1370, 94 L.Ed.2d 686 (1987). However, as even the majority seems to acknowledge, the question of the allocation of burden of proof, the issue before the court in White and similar cases, is different from the issue of whether the state can require someone to accept grievous bodily injury or even the possibility of death as the price for not incurring criminal or quasi-criminal liability. As Judge Murnaghan of the Fourth Circuit has written:
 
 
 34
 It is difficult to the point of impossibility to imagine a right in any state to abolish self defense altogether, thereby leaving one a Hobson's choice of almost certain death through violent attack now or statutorily mandated death through trial and conviction of murder later.
 
 
 35
 Griffin v. Martin, 785 F.2d 1172, 1187 n. 37 (4th Cir.), aff'd by an equally divided court and op. withdrawn, 795 F.2d 22 (1986) (en banc), cert. denied, 480 U.S. 919, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987). See also John C. Jeffries, Jr. & Paul B. Stephan III, Defenses, Presumptions and Burden of Proof in the Criminal Law, 88 Yale L.J. 1325, 1366-79 (1979) (suggesting that self-defense is so critical to the concept of criminal responsibility and has such substantial effects on a defendant's liberty that to allow a conviction where reasonable doubt as to self-defense remains would be inconsistent with the fundamental notions of fairness that underlie the State's duty to establish criminal liability).
 
 
 36
 My brothers make the further point, however, that the recognition of self-defense in the prison environment poses special problems for the security of the institution and that these considerations justify the abrogation of the defense in the prison setting, even if such a defense must be recognized in other contexts. We have, no doubt, a special obligation to be sensitive to the legitimate requirements of prison security. This obligation brings with it an obligation of deference to the informed judgment of prison authorities with respect to matters of prison administration, especially those issues that implicate matters of security.[1] Yet, the Supreme Court has made it abundantly clear that the mere invocation of "security" or "expertise" does not permit a Judge of the Third Article to walk away from the issue.[2] There must be a demonstration on the part of the prison authorities that the deprivation in question is indeed "reasonably related to legitimate penological interests" of the corrections system. Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The principal reason offered by the majority has a superficial appeal. The absence of self-defense, it maintains, fosters a peaceful environment within the prison walls because it acts as a deterrent to all violence. A prisoner caught fighting, it reasons, cannot reliably exculpate himself later with a claim of self-defense. Yet, we are told in the following sentence, a prisoner can claim self-defense in mitigation of punishment, thus, it would seem, destroying a good deal of the supposed deterrent.
 
 
 37
 The difficulty with the majority's position is its assumption that the self-defense afforded to prisoners would have to be the same as that available in the general community and could not take into consideration the difficult circumstances of modern prison life. It may well be that self-defense in the prison environment ought to be available as a defense of extreme last resort and available only when the prisoner can establish that he cannot rely on the state to protect him, a situation that, the cases of this court make clear, occurs with some frequency. But to forbid all resistance to all threats to life and bodily integrity is not to ensure a lack of violence, as the majority suggests, but to leave the weak and the vulnerable the easy prey of the strong and the vicious. It is indeed a novel proposition of constitutional law to hold that a state, having deprived a person of liberty according to law, can further punish that individual for attempting to stay alive, even when the state itself is not ready, willing, or capable of assuming that responsibility by substituting its own strong arm for that of the prisoner-victim.[3]
 
 
 
 *
 H. Christian DeBruyn is substituted for his predecessor, James E. Aiken, as Commissioner of the Indiana Department of Correction pursuant to Fed.R.App.P. 43
 
 
 **
 Cudahy, Flaum, Ripple, and Rovner, Circuit Judges, voted to grant rehearing en banc
 
 
 [1]
 In addition to his due process claim, Rowe also alleged in his complaint that the Department of Correction's policy violated his Eighth Amendment rights; however, Rowe does not raise this issue on appeal
 
 
 [2]
 Given our holding, we need not and hence do not reach Rowe's arguments regarding whether the CAB found that Rowe used excessive force, and whether the prison officials were qualifiedly immune from suit
 
 
 [3]
 The district court's findings of fact contained the "related to legitimate penological interests" test associated with substantive due process and Bill of Rights claims, see e.g., Turner v. Safley, 482 U.S. 78, 97, 107 S.Ct. 2254, 2266, 96 L.Ed.2d 64 (1987) (fundamental right to marry); Hadi v. Horn, 830 F.2d 779 (7th Cir.1987) (First Amendment free exercise); however, the court explicitly rests its holding on procedural due process grounds, and cites only procedural due process cases, Casteneda v. Henman, 914 F.2d 981 (7th Cir.1990), cert. denied, 498 U.S. 1124, 111 S.Ct. 1085, 112 L.Ed.2d 1190 (1991), Gaston v. Taylor, 946 F.2d 340 (4th Cir.1991) (en banc), Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), and Pardo v. Hosier, 946 F.2d 1278 (7th Cir.1991), as support
 
 
 [4]
 We note that although Rowe has complained that the conduct of prison officials denied him a statutory defense provided in Indiana's criminal code, he has not raised a state law claim in this case. Rowe alleges only constitutional violations by the appellees under Sec. 1983
 Even if Rowe had tried to raise a state law claim in this case, we would not have been in a position to entertain it. This is because the Supreme Court has held that the Eleventh Amendment bars "federal suit[s] against state officials on the basis of state law ... when ... the relief sought and ordered has an impact directly on the State itself." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Because Rowe is challenging the IDOC's self-defense policy as well as the CAB's adverse ruling, the relief Rowe requests would clearly have a direct effect on the State. Thus, in this case, had Rowe actually sought relief based on Sec. 35-41-3-2 we would have been compelled to dismiss his claim, because under Pennhurst, "we lack the authority to direct state officials to comply with state law." Archie, 847 F.2d at 1216.
 
 
 [1]
 See, e.g., Block v. Rutherford, 468 U.S. 576, 584-85, 104 S.Ct. 3227, 3231-32, 82 L.Ed.2d 438 (1984) (stating that security considerations are "peculiarly within the province and professional expertise of corrections officials") (citations omitted); Pardo v. Hosier, 946 F.2d 1278, 1280 (7th Cir.1991) (stating that "prison administrators must be accorded wide-ranging deference in the ... execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security") (citations omitted)
 
 
 [2]
 See, e.g., Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974) (stating that, although courts must show deference in dealing with problems of prison administration, "a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution")
 
 
 [3]
 It ought to be pointed out that the Indiana legislature actually might afford prisoners more protection than the majority assumes. Indiana Code Ann. Sec. 35-41-3-2 states that "[n]o person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary." Whenever we interpret a statute, we must begin with the plain meaning of that statute. Notably, the Indiana statute reserves the right of self-defense to any situation in which a "person" is put "in legal jeopardy of any kind whatsoever." Ind.Code Ann. Sec. 35-41-3-2 (emphasis added). As the majority quite graphically points out in the latter part of it opinion, the consequences of the disciplinary hearing in this case were indeed significant and can quite comfortably fit with the term "legal jeopardy of any kind whatsoever." The constraints of the Eleventh Amendment, as interpreted in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984), preclude our entertaining a claim for relief based only on state law. Any remedy on this basis must be sought in the Indiana courts