902 A.2d 357 (2006)
386 N.J. Super. 631
Michael DeCAMP, Petitioner-Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 2006.
Decided July 27, 2006.
Michael DeCamp, appellant pro se.
Zulima V. Farber, Attorney General, attorney for respondent (Patrick DeAlmeida, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).
Before Judges WECKER, FUENTES and GRAVES.
The opinion of the court was delivered by
*358 FUENTES, J.A.D.
This appeal requires us to determine whether a hearing officer in a prison disciplinary proceeding must consider a claim of self-defense, as a defense to the charge of fighting with another person, *.004. Petitioner Michael DeCamp, an inmate currently incarcerated at South Woods State Prison, appeals from a final administrative decision rendered by the New Jersey Department of Corrections ("DOC"), imposing disciplinary sanctions upon him for committing prohibited act *.004,[1] fighting with another person. Petitioner is serving a four-year sentence with a mandatory 85% NERA parole ineligibility term, N.J.S.A. 2C:43-7.2, in connection with his conviction for third-degree aggravated assault.
In this appeal, petitioner raised the following issues:
POINT I
APPELLANT BRINGS THIS CAUSE OF ACTION AS PURSUANT TO N.J.A.C. 10A:4.
POINT II
THE DEPARTMENT OF CORRRECTION[S] ERRED WHEN IT CHAR[G]ED AND FOUND THE APPELLANT GUILTY OF DISCIPLINARY INFRACTION *.004 FIGHTING WITH ANOTHER PERSON WHEN THERE EXISTED NO SUBSTANTIAL EVIDENCE TO SUBSTANTIATE SUCH A DISCIPLINARY CHARGE WHEN IN FACT HE WAS SEXUALLY ASSAULTED BY INMATE WALTER KERESTY.
In a reply brief, petitioner raised the following points:
POINT I
THE FINAL DECISION OF THE DEPARTMENT OF CORRECTIONS WAS NOT BASED UPON FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ALSO LACKS THE NECESSARY ELEMENTS TO SUSTAIN GUILT BASED UPON SUBSTANTIAL CREDIBLE & RELIABLE EVIDENCE IN THE RECORD AS A WHOLE.
POINT II
DeCAMP HAD A RIGHT UNDER NEW JERSEY LAW TO DEFEND AND PROTECT HIMSELF WITH THE APPLICATION OF REASONABLE FORCE IN THE PRESERVANCE OF LIFE AND LIBERTY AGAINT ASSAULT UNDER THE FOURTEENTH AMENDMENT.
POINT III
THE DISCIPLINARY HEARING OFFICER IN THIS MATTER VIOLATED DeCAMP'S RIGHT TO OFFER AND PRESENT DOCUMENTARY EVIDENCE ON HIS BEHALF.
POINT IV
DeCAMP WAS DENIED EFFECTIVE ASSISTANCE OF A COUNSEL SUBSTITUTE WHOM [SIC] AMOUNTED TO BE NONEXISTENT AND FAILED TO MAKE ANY REPRESENTATIONS ON DeCAMP'S CASE.
POINT V
DeCAMP WAS DENIED EQUAL PROTECTION AND FUNDAMENTAL FAIRNESS AT HIS DISCIPLINARY HEARING.
POINT VI
THE DEPARTMENT OF CORRECTIONS WITHHELD DISCOVERY MATERIALS FROM DeCAMP DURING HIS DISCIPLINARY HEARING AND PERFECTION OF HIS APPELLATE COURT APPEAL.
*359 Petitioner argues that there was insufficient evidence to sustain the hearing officer's finding that he engaged in the prohibited act of fighting with another inmate. He maintains that the actions he took on the date of the incident were purely self-defense measures, designed and intended to counteract the unlawful force used against him by his attacker. Petitioner also raises a number of other arguments relative to alleged procedural irregularities in the manner the case was adjudicated. We need not, and in fact do not reach petitioner's procedural arguments. We conclude that the sanction imposed cannot stand, because the DOC did not properly consider petitioner's self-defense claim.
These are the facts. Petitioner identifies himself as a transsexual who has undergone breast implants, but has not completed the surgical process to change his physical gender. Several months before the altercation, petitioner reported to the prison social worker and to Internal Affairs that Keresty had been sexually harassing him. On September 1, 2005, at approximately eight o'clock in the evening, petitioner approached Senior Corrections Officer Durham and reported that inmate Keresty had assaulted him in the yard. According to the disciplinary report filed by Durham, petitioner indicated that Keresty "slammed his head into the concrete wall, and then tried to jam his tongue down his throat."
With respect to the incident, the hearing officer found that:
[Keresty] stated that they [petitioner and Keresty] [have] been friends for approx. 1 year. [Keresty] feels that [petitioner] has been sexually teasing him by grabbing private parts, flashing, walking together, hugging. Therefore [Keresty] got upset and attempted to kiss [petitioner]. [Petitioner] pushed him away. As [Keresty] went back, [petitioner] hit his [head] against the wall. Keresty denies [the] fight.
Keresty gave a different version of how the event transpired to the corrections officers that escorted him back to his cell after the incident. In this version, Keresty indicated that the fight had been staged so that petitioner would be transferred to a different housing unit in the prison. As part of an investigative report, Sergeant P. Newbill indicated that he observed the two men together shortly before the incident, and in his opinion, they "appeared to get along."
Despite Keresty's admission in a statement submitted to the hearing officer that he was the initial aggressor, and that his actions were explicitly sexual in nature, the hearing officer found petitioner guilty of fighting. By way of sanctions, the hearing officer recommended ten days of detention, 180 days loss of commutation time, and 180 days of administrative segregation. The recommendations were accepted and implemented by the prison administration.
Although in its brief before us the DOC argues that the hearing officer found that the fight had been staged, the record does not support that conclusion. The hearing officer's findings only mention that a corrections officer had observed "both [inmates] having a conversation 20 [minutes] earlier [and] appeared to get along." There is no reference in the hearing officer's adjudication report that his decision finding petitioner guilty was in any way connected to the alleged staging of the fight. By contrast, the hearing officer made clear that he accepted Keresty's account naming himself as the initial aggressor.
We begin our analysis by reaffirming that "although the determination of an administrative agency is entitled to *360 deference, our appellate obligation requires more than a perfunctory review." Blackwell v. Dep't of Corr., 348 N.J.Super. 117, 123, 791 A.2d 310 (App.Div.2002). Our role is to engage in a "careful and principled consideration of the agency record and findings." Williams v. Dep't of Corr., 330 N.J.Super. 197, 204, 749 A.2d 375 (App.Div.2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973)).
The concept of self-defense is not expressly mentioned in the administrative regulations governing the administration of inmate discipline. There is an oblique recognition of such a right, however, in N.J.A.C. 10A:31-16.1(b), which requires that "Rules, upon which inmate discipline is based, must be reasonable and evenly applied, and the action taken to determine an alleged infraction must be based on findings of fact." (Emphasis added). In our view, this requires disciplinary proceedings involving the prohibited act of fighting with another person, *.004, to be conducted consistent not only with due process, but with a measure of fairness and common sense.[2] Our research has revealed only a few reported cases on the question of whether self-defense is available as a defense to a prison disciplinary charge. In Rowe v. DeBruyn, 17 F.3d 1047, 1049 (7th Cir.1994), cert. denied, 513 U.S. 999, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994), an inmate filed a 42 U.S.C.A. § 1983 action against various prison officials from the State of Indiana claiming that the Indiana Department of Correction's policy of denying prisoners the right to raise self-defense, as a complete defense in a disciplinary hearing, constituted a deprivation of that prisoner's right to due process under the federal constitution. Ibid.
The facts in Rowe contained the same theme of inmate-on-inmate violence, perpetrated in the context of an unwelcome sexual encounter.
Rowe's predicament began early in July 1991, when the Reformatory transferred Michael Evans to a cell adjacent to Rowe's cell. Rowe complained to prison staff about Evans' new cell assignment, apparently because he felt that Evans' proximity might cause trouble. Rowe's fears were soon substantiated. On July 18, Evans wrote Rowe a note demanding that Rowe go to Evans' cell the next morning and engage in sexual activities with him. In the note, Evans accused Rowe of sexually enticing him and threatened that if Rowe did not meet Evans' aroused expectations, "someone will get hurt and perhaps even die."
The next morning during "breakfast feed," Evans entered Rowe's cell. Rowe claims that Evans physically attacked him and attempted to rape him. Rowe yelled out for help, and in an alleged attempt to repel Evans, struck him repeatedly with the unheated hot pot. Another prisoner, Richard Perez, hearing shouts from Rowe's cell, ran in to break up the fight. He found the two men struggling. Perez pulled Evans from Rowe and then helped Rowe push Evans *361 out of the cell. All three men were eventually disciplined.
[Ibid.]
The District Court granted the prison officers' motion for summary judgment, and on appeal to the Seventh Circuit, the majority of the court affirmed, holding that Rowe did not have the substantive constitutional right to assert the defense of self-defense in a prison disciplinary hearing. Id. at 1052-53. The Seventh Circuit indicated that even if such a right had been clearly established in the context of a criminal case, it does not "necessarily apply to prison disciplinary proceedings." Id. at 1052.
Even if Rowe did have a constitutional right of self-defense, the [Department of Corrections'] policy to deny a prisoner the right to raise it as a complete defense is reasonably related to legitimate penological interests. The policy purportedly advances prison security by discouraging all physical violence amongst inmates. It acts as a didact by warning prisoners that violence against another inmate is a unilaterally condemned and perpetually sanctionable violation of prison rules . . . . The [Department of Corrections] policy allows a [hearing officer] to consider self-defense in mitigation. In this case, the mitigating factor of self-defense led to a suspension of Rowe's disciplinary segregation, so that the record of rule violation and the possibility of penalty reinstatement were the only consequences Rowe suffered from the [hearing officer's] adverse finding. Given that prison security and the reduction of violence are certainly legitimate penological interests, and that appellees' self-defense policy does not absolutely deprive a prisoner of his ability to prove and benefit from a claim of self-defense, we conclude that the [Department of Corrections'] policy would not have impermissibly infringed Rowe's constitutional rights.
[Id. at 1053.]
Judge Ripple dissented, noting that the majority's decision
holds that the Constitution of the United States permits a state to leave, under all circumstances, an incarcerated person without any lawful recourse against even the most inhuman and vile attack on that person's life or bodily integrity. It sanctions the decision of the state government of Indiana to require that any person incarcerated under its authority submit, no matter what the circumstances, to any threat to life or bodily integrity without any recourse to self-defense of any kind.
[Id. at 1054.]
In response to the majority's concerns, with respect to the penological interests that might be compromised if self-defense as a complete defense to fighting were to be recognized in prison disciplinary hearings, Judge Ripple offered the following critique:
We have, no doubt, a special obligation to be sensitive to the legitimate requirements of prison security. This obligation brings with it an obligation of deference to the informed judgment of prison authorities with respect to matters of prison administration, especially those issues that implicate matters of security. Yet, the Supreme Court has made it abundantly clear that the mere invocation of "security" or "expertise" does not permit a Judge of the Third Article to walk away from the issue. There must be a demonstration on the part of the prison authorities that the deprivation in question is indeed "reasonably related to legitimate penological interests" of the corrections system. Turner v. Safley, 482 U.S. 78, 89 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64, 79 *362 (1987). The principal reason offered by the majority has a superficial appeal. The absence of self-defense, it maintains, fosters a peaceful environment within the prison walls because it acts as a deterrent to all violence. A prisoner caught fighting, it reasons, cannot reliably exculpate himself later with a claim of self-defense. Yet, we are told in the following sentence, a prisoner can claim self-defense in mitigation of punishment, thus, it would seem, destroying a good deal of the supposed deterrent.
The difficulty with the majority's position is its assumption that the self-defense afforded to prisoners would have to be the same as that available in the general community and could not take into consideration the difficult circumstances of modern prison life. It may well be that self-defense in the prison environment ought to be available as a defense of extreme last resort and available only when the prisoner can establish that he cannot rely on the state to protect him, a situation that, the cases of this court make clear, occurs with some frequency. But to forbid all resistance to all threats to life and bodily integrity is not to ensure a lack of violence, as the majority suggests, but to leave the weak and the vulnerable the easy prey of the strong and the vicious. It is indeed a novel proposition of constitutional law to hold that a state, having deprived a person of liberty according to law, can further punish that individual for attempting to stay alive, even when the state itself is not ready, willing, or capable of assuming that responsibility by substituting its own strong arm for that of the prisoner-victim.
[Id. at 1055-56 (emphasis added) (footnotes omitted).]
We find Judge Ripple's arguments persuasive. It seems to us, as a matter of basic human nature, that a victim of a physical attack will instinctively respond to protect his/her person from harm. In a prison environment, the issue is whether penological interests of security and order justify denying such an inmate the opportunity to avoid discipline by establishing that he was resisting a physical assault. The DOC regulations do not foreclose an inmate from raising the defense of self-defense in a prison disciplinary hearing. We agree with Judge Ripple that such a prohibition would "leave the weak and the vulnerable the easy prey of the strong and the vicious."[3]
In the seminal case of Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935, 950 (1974), the *363 United States Supreme Court declared that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." The Court thus established minimum federal procedural due process requirements for prison disciplinary proceedings. Our Supreme Court has extended "State due-process guarantees beyond the federal constitutional minimum." McDonald v. Pinchak, 139 N.J. 188, 195, 652 A.2d 700 (1995); see also Avant v. Clifford, 67 N.J. 496, 520, 341 A.2d 629 (1975).
We need not limit the protection afforded inmates under our State laws to those required under the federal constitution. In the absence of a regulation prohibiting it, we now hold that in cases charging an inmate with the prohibited act of fighting with another person, the hearing officer adjudicating the matter must carefully consider a proffer of self-defense, and if established, exonerate the individual charged with the infraction. When an inmate raises self-defense as an issue, the hearing officer must consider this defense, and make specific findings in support of his/her ultimate decision.
In going about this task, the hearing officer should determine: (1) who was the initial aggressor; (2) whether the force used to respond to the attack was reasonable; (3) whether the inmate claiming self-defense had a reasonable opportunity to avoid the confrontation by alerting prison authorities; and (4) any other factors that would make the use of force by the inmate claiming self-defense unreasonable, because it would interfere with or otherwise undermine the orderly administration of the prison.
We recommend that the DOC consider promulgating a regulation that addresses whether or not an inmate may raise the defense of self-defense in a disciplinary proceeding. If the DOC chooses to do so, the regulation should include the appropriate factors to be considered by the hearing officer.[4]
Because the hearing officer did not consider petitioner's claim of self-defense, *364 we are compelled to vacate the finding of guilt, and remand the matter for rehearing consistent with our decision.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] N.J.A.C. 10A:4-4.1(a).
[2] Although we do not base our decision on this principle, we note that we have recently recognized the applicability of the doctrine of fundamental fairness to inmate disciplinary proceedings. See Ramirez v. Dep't of Corr., 382 N.J.Super. 18, 24-25, 887 A.2d 698 (App. Div.2005) (holding that "when an inmate's request for a polygraph examination is denied, the `fundamental fairness' of the proceeding must be considered"). Fundamental fairness is invoked to protect a citizen against the unjust and arbitrary actions of the State. In re Sportsman's Rendezvous Retail Firearms Dealer's License, 374 N.J.Super. 565, 580, 866 A.2d 195 (App.Div.2005).
[3] We acknowledge that other jurisdictions are divided on the question. MacMillan v. Pontesso, 73 Fed.App'x 213, 214 n. 1 (9th Cir.2003) (implicitly finding that the denial of the right to raise self-defense in a prisoner disciplinary proceeding does not violate the Due Process of the federal constitution); Mitrione v. Martinez, 2006 WL 533419, at * 2006 U.S. Dist. LEXIS 12476, at *9 (D.S.D.2006) (finding no explicit prohibition of the right to assert self-defense in a prison disciplinary hearing); Sack v. Canino, 1995 WL 498709, at *1, 1995 U.S. Dist. LEXIS 12093, at *3 (E.D.Pa.1995) (finding that prisoner had no constitutional right to assert self-defense in a prison disciplinary hearing); Maldonado v. Luther, 1982 U.S. Dist. LEXIS 17426, at *18 (N.D.Ill.1982) (acknowledging that prisoner had an adequate opportunity to raise and develop self-defense in a prison disciplinary hearing); US ex rel. Diggs v. Franzen, 1980 U.S. Dist. LEXIS 14146, at *4-5 (N.D.Ill. 1980) (recognizing implicitly the right to raise self-defense in a prisoner disciplinary hearing); In re Baez v. Goord, 261 A.D.2d 741, 692 N.Y.S.2d 180, 181-82 (N.Y.App.Div.1999) (implicitly recognizing that the defense of self-defense can be raised in prison disciplinary hearings); Tauber v. Dep't of Corr., 172 Mich. App. 332, 431 N.W.2d 506, 509 (1988) (applying self-defense regulations in prison manual to prisoner disciplinary proceedings). The unpublished opinions listed here are included in the interest of completeness.
[4] By way of example, the Michigan Department of Corrections manual provides:

There are certain very narrow circumstances under which a prisoner is entitled to act in self-defense. If the prisoner claims that s/he acted in self-defense, the hearing officer must decide whether the conditions needed to establish the defense have been met. Although the hearing officer may consider the testimony of the reporting employee or witnesses as to whether the prisoner acted in self-defense, s/he must weigh that testimony, and all other evidence, and decide if the claim has been established. It should be noted that this defense is not available to protect property or "honor," but only the physical well-being of a prisoner.
All of the following six conditions must be found to exist for the hearing officer to properly accept a claim of "self-defense.["] (a) The prisoner must have had physical force used against him/her by another prisoner or prisoners, or reasonably believed that the use of physical force against him/ her was imminent.
(b) The prisoner claiming the defense was not the original aggressor.
(c) The prisoner did not provoke the attacker.
(d) The use of force was not by mutual agreement.
(e) The prisoner had no reasonable alternative to the use of force in defending his/her physical well-being (e.g., retreat or calling for help from staff was not a possible alternative).
(f) The prisoner did not use more force than was reasonably necessary for defense (if the prisoner fought back harder than necessary, s/he would be found guilty of fighting).
If any of the above factors are not established to the satisfaction of the hearing officer, the defense shall not be accepted.
[Hearings Handbook, Michigan Department of Corrections, Office of Policy, Hearings and Appeals Division (1996).]