**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2912-15T4
               A-1126-16T1
               A-3618-16T3

MICHAEL STANTON,

     Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS,

     Defendant-Respondent.

_____

> Submitted September 13, 2018 – Decided September 21, 2018
>
> Before Judges Reisner and Mawla.
>
> On appeal from the New Jersey Department of Corrections.
>
> Michael Stanton, appellant pro se.
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Suzanne Davies, Deputy Attorney General, on the brief in A-2912-15 and A-1126-16; Tasha Bradt, Deputy Attorney General, on the brief in A-3618-16).

PER CURIAM

Michael Stanton is presently serving a thirty-five year sentence in New Jersey State Prison for various offenses. In A-2912-15, Stanton appeals from a February 5, 2016 adjudication by the New Jersey Department of Corrections (DOC), finding him guilty of prohibited act *.004, fighting with another person. See N.J.A.C. 10A:4-4.1. In A-1126-16, he challenges an October 4, 2016 adjudication finding him guilty of prohibited act .705, commencing or operating a business or group for profit, or commencing or operating a non-profit enterprise without approval of the prison administrator. In A-3618-16, Stanton appeals from a December 8, 2016 decision adjudicating him guilty of prohibited acts *.10/*.803, attempting to participate, or participating, in activities related to a security threat group. We have consolidated these three appeals for purposes of this opinion. We affirm the adjudications in A-2912-15 and A-1126-16, and reverse and remand A-3618-16 to the DOC for a re-hearing. The relevant facts underlying each appeal are set forth below.

A-2912-15

On January 31, 2016, a senior correction officer observed Stanton fighting with two other inmates. The officer's report stated he sounded an alert and used pepper spray "in the direction of . . . Stanton" to break up the fight. When

Stanton was handcuffed he informed the officer the two other inmates had stolen his television. Prison officials discovered Stanton's television in the other inmates' cell. Stanton and the other inmates were charged with committing prohibited act *.004, fighting with another person. The other inmates were also charged with prohibited act .210 for the unauthorized possession of Stanton's television.

At the subsequent hearing, Stanton argued he was defending himself. The hearing officer concluded no evidence of self-defense was provided, and instead found "[a] Code 33 was called and [pepper] spray deployed." Stanton was found guilty of the fighting charge, and sanctioned with loss of recreation privileges, loss of commutation time, and administrative segregation.

A-1126-16

On August 6, 2016, the DOC recorded a telephone call between Stanton and his girlfriend wherein he asked "whether she had received any emails or phone calls" and "what mail she is getting ready." His girlfriend replied, "some books." He also asked her if a "guy" had contacted her about the money for the books and "if she included a self-addressed, stamped envelope" with the correspondence. Stanton also stated "out of everyone writing, [he was] the only one with books for sale." In response to his girlfriend stating she was "making

sure all of the pages are there," Stanton said "they'll tell you that . . . whoever get[s] it."

On the same date, the DOC confiscated a large box addressed to Stanton, which contained "magazines featuring women in scantily-clad clothing" and invoices from a wholesale periodical distributor. Stanton's girlfriend had made deposits totaling $750 into his prison account between June 21 and August 18, 2016. Invoices addressed to Stanton from the magazine distributor bearing names such as: "Dime Piece"; "Body"; "Thick"; "XXL"; "IAdore"; "Spicy Latinas"; "BlackMen"; "Seductive"; and "Shygirl" were dated July 29 and August 19, 2016. The invoices were contemporaneous with the deposits to Stanton's prison account.

The DOC investigation also revealed Stanton had received "a large manila envelope" containing letters from "inmates at other correctional facilities throughout the country" asking him to accept their writing samples for publication. One of the inmate letters referred to Stanton as "Author/CEO" of "Starchild Enterprise." Stanton also received a letter from PRC Book Printing addressed to "Starchild Publishing" in response to his request for a price quote.

As a result, the DOC investigation found Stanton intended to distribute the magazines to other inmates in exchange for "pecuniary benefit," and had

discussed both the magazines and "the business" during the call with his girlfriend. The investigation also found the girlfriend's statement she was "making sure all of the pages are there" concerned the magazines. As a result, the investigation concluded Stanton participated in two business ventures for profit, namely, one involving the sale of adult magazines to inmates, and the other involving the national solicitation of writing samples from inmates for publication in Stanton's capacity as "CEO" of Starchild Publishing. Accordingly, he was adjudicated guilty of operating a business.

A-3618-16

On January 25, 2015, a DOC investigator intercepted outgoing mail authored by Stanton to his girlfriend. According to the investigator, the mail was intercepted because it contained disapproved content. As a result, Stanton was charged with *.803/*.010, attempting to participate, or participating, in activities related to a security threat group.

The hearing officer found the Special Investigations Division (SID) received authorization to open the mail, as required by DOC regulations, but did not explain why the authorization was given. Prior to this appeal, we granted the Attorney General's motion to remand, for the DOC to explain the basis for

the authorization to open Stanton's mail. On appeal, Stanton argues the DOC refused to explain why SID believed the mail contained disapproved content.

I.

N.J.A.C. 10A:4-9.15(a) requires "a disciplinary hearing officer's adjudication that an inmate committed a prohibited act . . . be based on substantial evidence in the record." Figueroa v. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). The DOC cannot base disciplinary determinations on "a subjective hunch, conjecture or surmise of the factfinder." Id. at 191. Moreover, determinations cannot be based upon "bare net opinion." Williams v. Dep't of Corr., 330 N.J. Super. 197, 203-04 (App. Div. 2000).

"In light of the executive function of administrative agencies, judicial capacity to review administrative actions is severely limited." George Harms Constr. Co., Inc. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994). The "final determination of an administrative agency . . . is entitled to substantial deference." In re Eastwick Coll. LPN-RN Bridge Program, 225 N.J. 533, 541 (2016).

An appellate court will not reverse an agency's final decision unless the decision is "arbitrary, capricious, or unreasonable," the determination "violate[s] express or implied legislative policies," the agency's action offends the United States Constitution or the State Constitution, or "the findings on which [the decision] was based were not supported by substantial, credible evidence in the record."

[Ibid. (quoting Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Envtl. Prot., 191 N.J. 38, 48 (2007)).]

However, we must complete "more than a perfunctory review" of agency matters, and we will not "merely rubberstamp an agency's decision." Figueroa, 414 N.J. Super. at 191 (internal citations and quotations omitted).

II.

On appeal in A-2912-15, Stanton reiterates his claim of self-defense. In A-1126-16, Stanton argues he wanted to see the document authorizing the DOC to search his mail. Stanton also argues the disciplinary decision was not supported by substantial credible evidence. In A-3618-16, Stanton does not challenge the DOC's determination that the contents of his letter contained material related to a security threat group. Instead, he claims the DOC took too long to provide discovery in connection with the remand hearing, and did not establish the grounds to open his mail under N.J.A.C. 10A:18-2.7(d). We address these arguments in turn.

## A.

As we noted, in A-2912-15, Stanton was sanctioned for committing prohibited act *.044, fighting with another person. On appeal, he contends the two other inmates attacked him and stole his television. Indeed, the television was found in their cell, and the DOC confirmed it belonged to Stanton. The contemporaneous report of the incident states Stanton told officers the other inmates stole his television and it "escalated" into a "physical altercation." At the hearing, Stanton claimed he was defending himself. He did not call any witnesses or ask to confront any witnesses to corroborate his claim of self-defense.

An inmate charged with fighting may assert self-defense, "and if established, [self-defense will] exonerate the individual charged with the infraction." DeCamp v. N.J. Dep't of Corr., 386 N.J. Super. 631, 640 (App. Div. 2006). N.J.A.C. 10A:4-9.13(f) states:

> [T]he inmate claiming self-defense shall be responsible for presenting supporting evidence that shall include each of the following conditions:
>
> 1.　　The inmate was not the initial aggressor;
>
> 2.　　The inmate did not provoke the attacker;
>
> 3.　　The use of force was not by mutual agreement;

4.     The use of force was used to defend against personal harm, not to defend property or honor;

5.     The inmate had no reasonable opportunity or alternative to avoid the use of force, such as, by retreat or alerting correctional facility staff; and

6.     Whether the force used by the inmate to respond to the attacker was reasonably necessary for self-defense and did not exceed the amount of force used against the inmate.

Here, Stanton offered no evidence to corroborate his claim of self-defense beyond merely asserting it. To sustain a claim of self-defense, Stanton had to present evidence addressing the factors of N.J.A.C. 10A:4-9.13(f), in order to rebut the officer's observations. In the absence of such evidence, the DOC's determination Stanton was fighting because the other inmates had taken his television and that he was pepper sprayed in order to stop the altercation, which demonstrated he was the aggressor, was supported by sufficient credible evidence. Stanton's claim he was attacked and acting in self-defense was not supported by credible evidence. Accordingly, we affirm the DOC's decision in A-2912-15.

In A-1126-16, Stanton argues the DOC's determination he was guilty of .705, commencing or operating a business or group for profit, should be reversed for lack of substantial credible evidence. We disagree.

Stanton pled not guilty and denied he owned or operated a business. He claimed he advised unpublished authors how to properly submit their manuscripts for publication. However, he denied publishing any manuscripts. He explained he was a published author and writer for Starchild Publishing, and owned the copyright to his own book. He claimed that during the phone call with his girlfriend, he spoke with her "about books and emails" because she was his publicist.

The DOC found Stanton guilty and imposed sanctions. The DOC concluded Stanton intended to sell the magazines because of the large shipment he received, and found he was the CEO of Starchild Publishing based upon the letters he received from other inmates and the printing company. The DOC further concluded the telephone call supported the charge.

We are satisfied the evidence relied upon by the DOC was substantial and credible enough to support a finding of guilt, and was not based upon a "hunch, conjecture, [and] surmise." Figueroa, 414 N.J. Super. at 191. Indeed, Stanton

received a box of adult magazines, whose quantity was inconsistent with personal use, which supports the finding he was either commencing or operating a business for profit. Stanton's telephone calls referenced compensation for his efforts, and sought assurances third-parties had received complete copies of shipments. The telephone conversations, coupled with a large deposit into Stanton's JPay account, supported the finding he was in the magazine-selling business. Stanton's letter inquiry seeking a price quote from a publisher, and inmate letters asking him to publish their writing, supports the conclusion Stanton was operating a publishing business.[1]

For these reasons, we conclude the DOC's determination was based upon substantial, credible evidence in the record. We affirm the adjudication of guilt under the .705 charge.

## C.

Finally, in A-3618-16, Stanton argues the DOC determination he was guilty of *.803/*.010 for attempting to participate, or participating, in activities related to a security threat group should be reversed because the DOC violated

---

[1] Stanton's claim he was denied due process because the investigator failed to produce written verification he was authorized to read Stanton's mail lacks merit. No regulation requires the DOC to furnish a copy of the confidential authorization list in a disciplinary hearing.

due process by delaying his hearing, and did not give a reason why his mail was suspected to contain disapproved content. We agree the latter argument is cause to reverse the DOC's determination and remand for rehearing.

Before addressing our reasons for reversal, we address Stanton's due process claim. As we noted, this matter was remanded pursuant to a motion by the Attorney General for the DOC to make findings regarding the reasons for opening Stanton's mail. N.J.A.C. 10A:4-9.7 states:

> (a) Hearings that have been postponed for further investigation shall be reviewed by the Disciplinary Hearing Officer or Adjustment Committee to determine if an additional postponement is warranted:
>
> > 1. Within 48 hours of the postponement, if the inmate is in Prehearing Disciplinary Housing; or
> >
> > 2. Within seven calendar days of the postponement if the inmate is in any other unit. Should the seventh day fall on a Saturday, Sunday or holiday, the last day for the hearing shall be the business day immediately following the weekend or holiday.
>
> (b) Additional postponements shall be granted only in exceptional circumstances.

N.J.A.C. 10A:4-9.8(b) provides:

> The inmate shall be entitled to a hearing within seven calendar days of the alleged violation, including weekends and holidays, unless such hearing is prevented by exceptional circumstances, unavoidable

delays or reasonable postponements. Should the seventh day fall on a Saturday, Sunday or holiday, the last day for the hearing shall be the business day immediately following the weekend or holiday.

We reject Stanton's argument that the delay of his hearing was tantamount to a due process violation. N.J.A.C. 10A:4-9.9(a) states:

The failure to adhere to any of the time limits prescribed by this subchapter shall not mandate the dismissal of a disciplinary charge. However, the Disciplinary Hearing Officer or Adjustment Committee may, in its discretion, dismiss a disciplinary charge because of a violation of time limits. Such discretion shall be guided by the following factors:

1.    The length of the delay;

2.    The reason for the delay;

3.    Prejudices to the inmate in preparing his/her defense; and

4.    The seriousness of the alleged infraction.

The postponement here was for purposes of obtaining information for Stanton to use in the hearing to confront the DOC's witness. Stanton failed to show how he was prejudiced by a postponement whose purpose was to aid him in asserting a defense.

N.J.A.C. 10A:18-2.7(d) states outgoing correspondence "shall not be opened, read or censored <u>unless there is reason to believe</u>" (emphasis added) it

13

contains disapproved content, and the prison administrator gives advance approval. Unlike the charge in A-1126-16, where the basis to open Stanton's mail was justified by his telephone conversations with his girlfriend and large deposits to his prison account, here the record contains no basis for the DOC's actions. We are constrained to reverse and remand the adjudication of guilt because the DOC failed to make findings regarding its grounds for opening Stanton's mail.

We note there is no dispute the SID unit received authorization to open the mail, as required by the DOC regulations. According to the record, SID sought authorization based on a belief that the mail was gang related correspondence. However, even after we granted the Attorney General's motion for a remand to enable the DOC to set forth why it believed Stanton's mail contained disapproved content, the record still lacks an explanation. Indeed, the initial DOC adjudication stated: "See exhibit D4 for questions [and] responses . . . relied upon to determine guilt[.] . . . [T]he reason . . . [Stanton's] mail was opened is given in exhibits A8 [and] D4." However, exhibit A8 is redacted and offers no meaningful information, and D4 is missing from the record. The DOC disciplinary appeal disposition sheds no further light on the subject, and only states: "SID Investigators are trained in recognizing STG material and their

reports have to [be] relied upon as factual. SID stated they had reason to believe that the correspondence contained disapproved content and they received authorization to search correspondence as per policy."

We acknowledge that the DOC may be reluctant to provide an explanation for the decision to open an inmate's mail as it may compromise prison security or reveal the identity of a confidential informant. However, as we noted, our review is neither perfunctory nor a rubber stamp. In order for us to engage in a meaningful review, an explanation must be provided, by confidential appendix if necessary. For these reasons, we reverse and remand the guilty adjudication under .705 for a second hearing, which must include an explanation of the DOC's reason to believe Stanton's mail contained disapproved content.

The adjudications in A-2912-15 and A-1126-16 are affirmed. A-3618-16 is reversed and remanded for re-hearing and further findings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION